IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| **LYNDA SUE DREYER,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | **Judge Ronald A. Guzmán** |
| | ) | |
| **METROPOLITAN LIFE INSURANCE** | ) | **05 C 677** |
| **COMPANY and VERIZON WIRELESS** | ) | |
| **MANAGED DISABILITY BENEFIT PLAN,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff, Lynda Sue Dreyer, has sued Verizon Wireless Managed Disability Benefit Plan,

Verizon Wireless, the plan administrator, and Metropolitan Life Insurance Company

("MetLife"), the claims administrator, pursuant to the Employee Retirement Income Security

Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001 *et. seq.* Before the Court are the parties' cross-

motions for summary judgment. For the reasons set forth below, the Court grants defendants'

motion and denies plaintiff's motion.

### Facts

Plaintiff was formerly employed by Verizon Wireless as an administrative assistant, a

sedentary position. (Defs.' LR56.1(a)(3) Stmt. ("Defs.' LR56.1(a)(3)") ¶¶ 1, 3.) The Verizon

Wireless Health and Welfare Benefits Plan, which includes the Managed Disability Plan and the

short-term disability plan, is an employee welfare benefits plan operated on behalf of the

employees of Verizon Wireless and governed by ERISA. (*Id.* ¶ 4; *see* Defs.' Claim File, Plan

Administration Summary Plan Description, VZW0021–22.) Verizon Wireless is the Plan

Administrator and MetLife is the claims administrator for the short-term disability benefits plan. (Defs.' LR56.1(a)(3) ¶¶ 4-5.)

On April 27, 2004, Dreyer sought treatment from Dr. Hong of Pro Psych Associates because she was feeling overwhelmed and having sleep disturbances. (*Id.* ¶¶ 12–13.) According to Dr. Hong's notes from May 20, 2004, Dreyer's condition had improved with therapy but her depression increased without hormone treatments. (*Id.* ¶¶ 16, 18; Defs.' Claim File, Hong's Notes, MET00007.) On May 25, 2004, Dreyer visited Dr. William Markey and complained about, among other things, her throat and a vaginal yeast infection. (Defs.' LR56.1(a)(3) ¶ 21; Defs.' Claim File, Markey's Notes, MET00220.) Dr. Markey's notes indicate that she was experiencing abdominal problems for which he prescribed medicine. (Defs.' LR56.1(a)(3) ¶ 22.)

Dreyer's last day of work was May 28, 2004. (*Id.* ¶ 24.) On or around June 8, 2004, she filed a claim for short-term disability benefits based upon an alleged stress-related medical condition. (*Id.* ¶ 26; Pl.'s LR56.1(a)(3) Stmt. ("Pl.'s LR56.1(a)(3)") ¶ 4.)

On June 9, 2004, Dreyer sought treatment from Dr. Jerry Treppa of Pro Psych Associates. (Defs.' LR56.1(a)(3) ¶ 28.) Dr. Treppa reported that Dreyer experienced tiredness, poor concentration, poor appetite, social withdrawal, anxiety, panic attacks, and numerous symptoms of inattention. (*Id.* ¶ 30; Defs.' Claim File, Treppa's Notes, MET 00012.) His report states that she had been having familial problems and she complained of some physical conditions, such as a yeast infection, among other things. (Defs.' LR56.1(a)(3) ¶¶ 32-35, 38.) During the same visit, Dr. Treppa performed a Global Assessment of Functioning ("GAF") examination and reported that Dreyer's GAF score was 42 and that her highest score in the past year was 59. (*Id.* ¶ 44.) He also reported that Dreyer's psychomotor activity was normal, that her memory was normal, that her intellect and fund of information were above average, that her

general range of expression was labile and appropriate to thought content, and that her perception and thought processes were normal. (*Id.* ¶ 41.) However, Dr. Treppa diagnosed Dreyer as suffering a depressive disorder, not otherwise specified. (*Id.* ¶ 43.) In his recommendation, Dr. Treppa suggested that Dreyer should "return to work ASAP." (*Id.* ¶ 46.)

On June 28, 2004, MetLife arranged for Dr. Mark Schroeder, a psychiatrist, to review plaintiff's medical records, including the records of the additional visits she made to Drs. Hong and Treppa on June 10, and June 17, 2004, respectively. (*Id.* ¶ 58.) Based on Dr. Schroeder's review, MetLife determined that she did not qualify for short-term disability benefits under the Managed Disability Plan and notified plaintiff on June 28, 2004. (*Id.* ¶ 61.) MetLife explained its determination that Dreyer was ineligible for benefits as follows:

> In conclusion, the decision to deny your claim is based on the medical information that we have received and reviewed which does not substantiate your inability to work. Although you and your treatment providers reported that you are experiencing some symptoms of depression, there was no report of any functional impairments due to a psychiatric condition nor a description of how these prevent you from working. Additionally the medical information received in this claim was reviewed by an independent physician consultant psychiatrist who concluded that the medical information received does not substantiate any functional impairment due to a psychiatric condition.

(*Id.* ¶ 62; Defs.' Claim File, Letter of 6/28/04 from MetLife to Dreyer, MET00023.) MetLife advised plaintiff of her right to appeal its determination that she was ineligible for benefits and informed her that she could submit additional documentation in support of her claim. (Defs.' LR56.1(a)(3) ¶ 63.)

On June 30, 2004, plaintiff claimed to be experiencing anger, disappointment, despair, and suicidal ideation during her medical sessions with Drs. Hong and Treppa. (*Id.* ¶ 67.) However, plaintiff failed to submit to MetLife any records from Dr. Hong regarding the suicide assessment he performed on June 30, 2004 or any additional documents regarding her alleged

3

suicidal ideation.[1] (*Id.* ¶ 70.) The record neither contains any further information regarding plaintiff's alleged suicidal ideation nor reflects whether she was, in fact, ever hospitalized for depression or sought any further psychiatric treatment. (*Id.* ¶ 73.) On July 1, 2004, Dr. Treppa faxed his progress notes regarding plaintiff to MetLife and on the fax cover sheet, someone from his office wrote "Pls. Reconsider – Patient is not capable to return to work." (*Id.* ¶ 74; Defs.' Claim File, Facsimile of 7/1/04 from Treppa to MetLife, MET00018.)

On or around July 26, 2004, Dreyer appealed MetLife's determination that she was ineligible for benefits under the terms of the Plan. (Defs.' LR56.1(a)(3) ¶ 76.)

On August 7, 2004, Dr. Markey performed a CT scan on plaintiff's abdomen and pelvis in response to her complaints of pain in her right lower quadrant and pelvis. (*Id.* ¶ 79.) A radiology consultant's report regarding Dreyer's CT scan stated that it indicated an unremarkable liver, spleen, small bowel, colon and bladder and a probable right ovarian cyst. (*Id.* ¶ 84.) However, neither plaintiff nor her physicians provided any additional information to MetLife regarding any ovarian condition experienced by plaintiff; or what effect, if any, that condition had on Dreyer's ability to work. (*Id.* ¶¶ 82, 85.) On August 19, 2004, plaintiff informed MetLife that her physician had found a "mass in her stomach," which Dreyer believed to be the cause of her exhaustion. (*Id.* ¶ 86.) On August 19, 2004, and again on August 23, 2004, MetLife advised Dreyer to submit all available medical records supporting her appeal. (*Id.* ¶ 87.)

In response to plaintiff's appeal, MetLife requested a second, independent medical evaluation of plaintiff's condition by Dr. Ernest Gosline, a psychiatrist. (*Id.* ¶ 88.) On August

---

[1] As plaintiff neither admitted nor denied defendants' statement, paragraph 70 of defendants' LR56.1(a)(3) Statement is deemed admitted.

19, 2004, after reviewing the medical records submitted by plaintiff, Dr. Gosline concluded that "there is lack of evidence of a global impairment of function that would prevent the employee from performing the duties of her own occupation." (*Id.* ¶ 92; Defs.' Claim File, Physician Consultant Review, MET00031.) On September 2, 9, 10, and 13, MetLife advised plaintiff that it had not received any additional records concerning her physical condition to support her claim for short-term disability benefits. (Defs.' LR56.1(a)(3) ¶ 93.) In its letter of September 22, 2004, MetLife informed plaintiff that it had completed its review of her file and that her appeal was denied. (*Id.* ¶ 97; Defs.' Claim File, Letter of 9/22/04 from MetLife to Dreyer, MET00045.) MetLife stated that neither Dreyer's psychiatric condition nor her physical condition would prevent her from performing the essential functions of her sedentary job at Verizon Wireless. (Defs.' LR56.1(a)(3) ¶ 98.)

## Discussion

Summary judgment should be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). Accordingly, if there is a dispute over a material fact "such that a reasonable jury could return a verdict for the nonmoving party," summary judgment is inappropriate. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When deciding a motion for summary judgment, the Court must view the evidence and draw all reasonable inferences from it in the light most favorable to the nonmovant. *Id.* at 255.

## I. Standard of Review

A denial of benefits challenged under 29 U.S.C. § 1132(a)(1)(B) is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator discretionary authority to determine eligibility for benefits or to construe the terms of the plan. *Firestone Tire & Rubber v. Bruch*, 489 U.S. 101, 115 (1989). If a plan gives the power of discretionary determination to the administrator, the court will upset its determination only if it was arbitrary and capricious. *Herzberger v. Standard Ins. Co.*, 205 F.3d 327, 329 (7th Cir. 2000). The Seventh Circuit has described safe harbor language that would unequivocally provide discretionary authority to the plan administrator: "Benefits under this plan will be paid only if the plan administrator decides in his discretion that the applicant is entitled to them." *Id.* at 331 (quotations omitted). "However, there are no magic words determining the scope of judicial review of decision to deny benefits," thus the "safe harbor" language is not mandatory. *Id.* (quotations omitted); *see Diaz v. Prudential Ins. Co. of Am.*, 424 F.3d 635, 637 (7th Cir. 2005). "[T]he critical question is whether the plan gives the employee adequate notice that the plan administrator is to make a judgment within the confines of pre-set standards, or if it has the latitude to shape the application, interpretation, and content of the rules in each case." *Diaz*, 424 F.3d at 639-40. Plans with discretion, for which review is deferential, "communicate the idea that the administrator not only has broad-ranging authority to assess compliance with pre-existing criteria, but also has the power to interpret the rules, to implement the rules, and even to change them entirely." *Id.* at 639.

The Plan governing Dreyer's claim states that:

> The [Plan Administrator] and its designated agents shall have the exclusive right and *discretion to interpret the terms and condition of the Plan* and to decide all matters arising with respect to the Plan's administration and operation (including

6

factual issues). Any interpretation or decisions so made shall be conclusive and binding on all persons, subject to the claims procedures set forth in each respective coverage document . . . .

(Defs.' Claim File, Plan Administration Summ. Plan Description, VZW0059 (emphasis

added).)

The Managed Disability Summary Plan Description further provides:

Verizon Wireless has delegated to MetLife discretionary authority as to all aspects of claims administration for the [short-term disability] portion of the Managed Disability Plan. This delegation includes the ability to render initial decisions on claims, render decisions on all appeals of denied claims, and to otherwise interpret the terms of the Disability portion of the Plan. The decision of MetLife is final and binding to the extent permitted under the law.

. . . .

If MetLife does not continue to certify your disability absence, your [short-term disability] benefits will stop. You and your *Physician* may agree that you are unable to work, but MetLife is the Claim Administrator and has discretionary authority to determine whether you are disabled and entitled to [short-term disability] benefits. Thus, MetLife is responsible for the certification of your disability.

(Defs.' Claim File, Managed Disability Summ. Plan Description, MET0067, MET0084.)

The language of the governing Plan clearly puts plan participants on notice that

the Plan Administrator has broad-ranging authority and the discretionary latitude to

interpret the terms and condition of the Plan. The Plan grants broad-ranging authority to

the Plan Administrator, and the Summary Plan Description outlines MetLife's

discretionary authority specific to the disability plan.

Dreyer contends that employees are not put on notice of the Plan Administrator's

discretionary authority due to the difference in language between the governing Plan and

the Summary Plan Descriptions and, alternatively, that a summary plan description

"cannot be used to expand discretion given under [a] plan," citing *Flood v. Long Term*

7

*Disability Plan for First Data Corp.*, Nos. 00 C 2568, 01 C 1610, 2002 WL 31155099, at *3 (N.D. Ill. Sept. 27, 2002). Although the language of the governing Plan and that of the Summary Plan Descriptions are not identical, they are consistent with each other and would not detract from a plan participant's understanding of their effect. Furthermore, the Summary Plan Descriptions do not "expand" the discretion given under the governing Plan but simply delineate MetLife's broad discretionary authority with regard to the disability plan. In fact, *Flood v. Long Term Disability Plan for First Data Corp.* stands for the proposition that the governing plan controls if there is a conflict between the plan and a summary plan description, and not for the proposition that summary plan descriptions cannot give discretionary authority to plan administrators altogether. *Id.* In this case, the Summary Plan Descriptions neither contradict nor expand the governing Plan. Even if the Summary Plan Descriptions were to contradict the governing Plan, the governing Plan sufficiently puts plan participants on notice that the Plan Administrator is vested with full discretionary authority over the Verizon Wireless Health and Welfare Benefits Plan in its entirety, including the Managed Disability Plan.

Plaintiff next argues that the Managed Plan Summary Plan Description states that "[t]he decision of MetLife is final and binding to the extent permitted under the law." (Pl.'s LR56.1(a)(3) ¶ 45.) Thus, plaintiff opines, the Plan is required by law to adhere to an Illinois Department of Insurance regulation, 29 Ill. Reg. 10172 (July 15, 2005), which prohibits insurance companies from including in any contracts offered in Illinois language purporting to give a carrier discretion to interpret the terms of the contract.

However, "it appears that the Illinois regulation would not apply to self-funded plans." *Guerrero v. Hartford Fin. Servs. Group*, No. 05 C 2787, 2006 WL 1120526, at

8

*7 n.3 (N.D. Ill. Apr. 26, 2006); *see FMC Corp. v. Holliday*, 498 U.S. 52, 61 (1990) ("[S]elf-funded ERISA plans are exempt from state regulation insofar as that regulation relate[s] to the plans." (quotation omitted)). The short-term disability portion of the Plan is "self-funded by Verizon Wireless," as "[the short-term disability benefits] are paid directly out of general assets of Verizon Wireless." (Defs.' Claim File, Plan Administration Summ. Plan Description, VZW0021-22.)

Further, there is an alternative reason why the specific Illinois regulation is inapplicable to the instant case. The regulation did not become effective until July 15, 2005, which was after the plan service agreement was executed, ten months after MetLife denied the appeal, and five months after the plaintiff filed this lawsuit. *See, e.g., Guerrero*, 2006 WL 1120526, at *7 n.3.

Thus, MetLife's determination of plaintiff's ERISA claim will be reviewed under the arbitrary and capricious standard. Under the arbitrary and capricious standard of review, MetLife's decision may be overturned only if it was "downright unreasonable." *Davis v. Unum Life Ins. Co. of Am.*, 444 F.3d 569, 576 (7th Cir. 2006) (quotation omitted). "[Q]uestions of judgment are left to the plan administrator, and it is not our function to decide whether we would reach the same conclusion as the administrator." *Sisto v. Ameritech Sickness & Accident Disability Benefit Plan*, 429 F.3d 698, 701 (7th Cir. 2005) (quotations omitted).

## II. MetLife's Denial of Plaintiff's Disability Claim Was Not Arbitrary or Capricious

Plaintiff first contends that MetLife's denial of plaintiff's short-term disability claim was unreasonable because MetLife's consultative psychiatrist, Dr. Gosline, did not

9

examine the plaintiff. However, the Seventh Circuit has held that doctors who have not personally examined an employee may rely entirely on paper review. *Davis*, 444 F.3d at 577. In reviewing medical files, "doctors are fully able to evaluate medical information, balance the objective data against the subjective opinions of the treating physicians, and render an expert opinion without direct consultation." *Id.* Thus, MetLife's reliance on the opinion of a non-treating psychiatrist who reviewed the Plaintiff's medical information was not arbitrary and capricious.

Plaintiff's argument that Dr. Gosline's opinion is internally inconsistent and that he mischaracterizes and ignores the evidence from plaintiff's psychiatrist and psychologist is also unfounded. It was not inconsistent for Dr. Gosline to conclude both that plaintiff was "capable of handling many stressors within her own family" and that "[she] continues to feel overwhelmed by the stresses within her family." (Defs.' Claim File, Physician Consultant Review, MET00031–32.) In support of these conclusions, Dr. Gosline cited Dr. Hong's notes of May 20, 2004, which stated that "therapy helped her a lot and . . . she is sleeping better on the medication as provided." (*Id.*, MET00032.) It was not unreasonable for Dr. Gosline to determine that while plaintiff still feels overwhelmed by stressors within her family, the therapy and medication helped plaintiff deal with many of the stresses and that she continues to improve. In addition, Dr. Gosline fully examined Dreyer's medical records and discussed her psychiatric condition, history of substance abuse, and familial difficulties. Dr. Gosline's statement that there was a lack of evidence of a global impairment of function is fully supported by, rather than a mischaracterization of, plaintiff's medical files. Dr. Treppa reported that plaintiff received a GAF score of 42. (Pl.'s LR56.1(a)(3) ¶ 26.) A GAF score of 41-50

10

denotes "[s]erious symptoms (*e.g.*, suicidal ideation, severe obsessional rituals, frequent shoplifting) or any serious impairment in social, occupational, or school functioning (*e.g.*, no friends, unable to keep a job)." DSM-IV: AXIS IV, GLOBAL ASSESSMENT OF FUNCTIONING (Am. Psychiatric Ass'n 2000).[2] On the very same day, however, Dr. Treppa reported that plaintiff's psychomotor activity was normal, that her memory was normal, that her intellect and fund of information were above average, that her general range of expression was labile and appropriate to thought content, and that her perception and thought processes were normal, and he suggested that plaintiff "return to work ASAP." (*See* Defs.' LR56.1(a)(3) ¶ 41; Defs.' Claim File, Treppa Notes, MET00016.) Due to such inconsistencies in Dr. Treppa's medical report, the Court cannot conclude that Dr. Gosline mischaracterized plaintiff's evidence or that his findings were unreasonable.

Plaintiff argues that the denial of her claim for benefits was arbitrary and capricious because on July 1, 2004, Dr. Treppa sent his progress notes dated June 17, 2004 and June 30, 2004 with a facsimile cover sheet to the Plan Administrator that stated: "Pls. Reconsider – Patient is not capable to return to work." (Defs.' Claim File, Facsimile of 7/1/04 from Treppa to MetLife, MET00018.) Without objective evidence supporting the conclusion that claimant's mental or physical condition constitutes a disability under a benefit plan, defendants' determination is not arbitrary or capricious on the basis of unsubstantiated conclusory statements made by claimant's doctors. *Donato*

---

[2]Further, a GAF score of 42, in and of itself, without any adequate explanation as to why such a score is given, does not create a reasonable inference that Dreyer was incapable of working because such a score may merely indicate that she was experiencing a serious impairment of social functioning outside of work. Dr. Treppa's notes indicate that the only occupational problem that Dreyer had experienced was "[d]iscord with boss." (Defs.' Claim File, Treppa Notes, MET00015.)

*v. Metro. Life Ins. Co.*, 19 F.3d 375, 380 (7th Cir. 1994) (stating claim for benefits for a psychiatric disability "require[s] objective psychiatric evidence linking [plaintiff's] symptoms to a psychiatric disorder that is totally disabling"), *questioned on other grounds by Diaz*, 424 F.3d at 639. As admitted by plaintiff, neither Dr. Treppa nor his office provided any explanation or analysis to support his conclusion. (Defs.' LR56.1(a)(3) ¶ 74.)

In addition, plaintiff failed to submit to the Plan Administrator any records from Dr. Hong regarding his assessment of her on June 30, 2004, or any additional documents regarding her purported suicidal ideation, even though a submission of those records might have supported her disability claim. (*Id.* ¶ 70.) On August 7, 2004, during the appeal process, plaintiff also visited Dr. Markey for examination of her abdomen and pelvis. (*Id.* ¶ 82.) However, neither plaintiff nor her physicians provided any additional information to MetLife regarding any ovarian condition experienced by plaintiff or what effect any such condition had on Dreyer's ability to work. (*Id.* ¶ 85.) On September 2, 9, 10 and 13, MetLife advised plaintiff that it had not received any additional records of her physical condition to support her claim for short-term disability benefits. (*Id.* ¶ 93.) Plaintiff does not claim to have submitted any additional psychiatric records since Dr. Gosline's medical evaluation or any records regarding her physical condition. Also, besides the unsubstantiated statement from Dr. Treppa's office, no other doctor on record came to a medical conclusion that plaintiff could not return to work. Thus, it was not unreasonable for MetLife to conclude that plaintiff's condition did not prevent her from working, regardless of unsubstantiated or inconclusive statements by her doctors.

12

Lastly, plaintiff contends that the Plan Administrator's decision should be reversed for its failure to consider the essential functions of plaintiff's occupation. (Pl.'s Mot. Summ. J. 4.) To support her argument, plaintiff relies on *White v. Airline Pilots Ass'n International*, 364 F. Supp. 2d 747, 762 (N.D. Ill. 2005), and *Quinn v. Blue Cross & Blue Shield Ass'n*, 161 F.3d 472, 474 (7th Cir. 1998).

However, the disability benefit plans in those cases can be distinguished from the plan in this case. In *White*, the benefit plan required that the employer provide the Plan Administrator with a job description of the claimant. *White*, 364 F. Supp. 2d at 762. Under the plan in *Quinn*, a determination of disability rested on whether the employee was wholly prevented from engaging in any other occupation that provides a similar salary range for a person with similar skills and education as the employee. *Quinn*, 161 F.3d at 474. Unlike the specific language of the plans above, the Plan in this case employs general language and does not explicitly require an employer to provide a job description of a claimant or oblige the Plan Administrator to independently investigate the claimant's job description or her skills and education.

MetLife's Plan provides that:

An employee is considered disabled under the [short-term disability] component of the Managed Disability Plan when the employee is absent from work because of impairment for which there is material medical evidence that: The employee cannot perform the Essential Functions of his or her job at Verizon Wireless.

(Defs.' LR56.1(a)(3) ¶ 10.) The Plan further generally defines "Essential Functions" as functions normally required for the performance of an occupation and which cannot be reasonably omitted or modified. (*Id.* ¶ 11.)

Although the Plan does not explicitly state who bears the burden of providing information relative to the essential functions of a claimant's job, because the Plan's definition of disability includes an inability to perform the essential functions of the job and the burden of establishing a disability is at all times on the claimant, the Plan implicitly places that burden on the claimant. Unfortunately, Dreyer failed to provide defendants with medical evidence that demonstrated her inability to perform the essential functions of her job. On many occasions, defendants advised plaintiff to provide them with additional evidence to support her claim. For example, MetLife sent the following request to Dreyer:

> If you have recent medical documentation not previously submitted which you believe may assist us in evaluating your claim for benefits please forward this information to us for review. In particular, office visit notes from your last two office visits including results of any objective testing, laboratory, etc., documentation relative to your functional capabilities, restrictions and/or limitations, *an assessment regarding your ability to return to work* and/or your return to work plans."

(Pl.'s LR56.1(a)(3) ¶ 11 (emphasis added); Defs.' Claim File, Letter of 6/28/04 from MetLife to Dreyer, MET00023.) In light of defendants' many requests for additional information, it is to Dreyer's detriment that she did not submit evidence that she was unable to perform the essential functions as an administrative assistant.

Furthermore, it was not unreasonable for defendants to omit a description of the essential functions of Dreyer's job in this case, because, based on the medical records submitted, plaintiff failed to demonstrate with objective evidence that she had any functional limitation at all, let alone any limitation that would interfere with her performing the essential functions of her job. MetLife's initial denial of plaintiff's claim states that:

14

> [T]here was no report of *any* functional impairments due to a psychiatric condition nor a description of how these prevent [plaintiff] from working. Additionally . . . an independent physician consultant psychiatrist [Dr. Schroeder] . . . concluded that the medical information received does not substantiate *any* functional impairment due to a psychiatric condition.

(*Id.* ¶ 62 (emphasis added); Defs.' Claim File, Letter of 6/28/04 from MetLife to Dreyer, MET00023.)

Based on the Plan Administrator's discretionary review of the material medical records, plaintiff did not suffer from any functional impairment. This conclusion rendered any discussion of the essential functions of plaintiff's occupation superfluous. This Court cannot deem defendants' initial denial of plaintiff's disability claim arbitrary or capricious. Even considering plaintiff's additional visits to her doctors since the initial denial of her claim, Dr. Gosline, on appeal, concluded that the medical records failed to demonstrate her inability to perform the essential functions of her job. (Defs.' Claim File, Physician Consultant Review, MET00031.) MetLife's conclusion, based on Dr. Gosline's expert opinion, is consistent with MetLife's initial determination that the medical records did not support any functional impairment. Thus, it was also not arbitrary and capricious for defendants to deny Dreyer's claim on appeal.

## Conclusion

For the reasons set forth above, the Court grants defendants' motion for summary

judgment [doc. no. 52-1], denies plaintiff's cross-motion [doc. no. 59-1] and hereby

terminates this case.

**SO ORDERED**                    **ENTERED:**

9/21/06

**HON. RONALD A. GUZMAN**
**United States Judge**